No. 19,444.

H. S. IRETON, *Appellant*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

No. 19,534.

W. F. SCHWANTES, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

DAMAGES—*Fire Negligently Started by Railroad Employees While Engaged in Private Business—Company Not Liable.* The rule that an employer in not liable for the consequences of negligent acts of his employee committed outside the scope of the employment applied in an action for damages resulting from a fire maintained by laborers for their own domestic purposes on the right of way of a railway company which employed them to lay steel and ballast track.

Appeals from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed November 6, 1915. Case No. 19,444 affirmed. Case No. 19,534 reversed.

*J. A. McDermott,* of Winfield, for the plaintiffs.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The defendant employed a large number of Mexican laborers to perform work on its track and road bed. These laborers, with their families, were allowed to live on the defendant's right of way. Some of them maintained open fires. From one of these fires fire was communicated to a near-by building owned by Ireton and occupied by Schwantes for a store. The building and its contents were destroyed, and separate suits for damages were brought by the respective owners. Ireton was defeated, and appeals. Schwantes recovered, and the railway company appeals.

In the Schwantes case the jury returned the following special findings of fact:

"Q. 3. If you find that plaintiff's property was destroyed by fire communicated from fires on defendant's right of way, state what officers, agents or employees set out such fires? A. 3. Mexican laborers.

"Q. 4. If you find that such fires were set out by any of defendant's employees, state for what purposes such fires were built or maintained? A. 4. Cooking and other purposes.

"Q. 5. If you find that plaintiff's property was destroyed from fires on defendant's right of way, state for whose benefit such fires were maintained?    A. 5. Mexican laborers."

The evidence upon these material and determining facts was substantially the same in both cases.  There was no evidence in either case that any one but the laborers set out the fires, or that the fires were maintained for other than cooking, washing and similar purposes, or that the fires were maintained for the benefit of any one but the laborers themselves.

The theory of the trial court was that the defendant was liable for the consequences of the negligent escape of fire maintained on its right of way with its knowledge and consent. This could be true only in the event that the fire was maintained for the benefit of the defendant in the conduct of the work which the laborers were hired to do, or perhaps in the event that the railway company permitted the creation of a common nuisance on its premises by its licensees, from which the damages sued for resulted.  The petitions were drawn and the cases were tried and submitted on the theory of negligence, and liability for nuisance need not be considered.  Liability for negligence rests on the doctrine of *respondeat superior,* the limits of which have just been stated.  The defendant's laborers were employed to lay steel, distribute ballast, and surface track.  When they were not doing this they were not working for the defendant and the defendant was not their superior.  Their camp fires were no more factors of this work than they would have been if they had been maintained for domestic purposes of the laborers elsewhere than upon ground owned by the defendant, and the defendant can be called upon to respond for a negligent act of an employee only when the act was committed in the prosecution of work which the employee was hired to do for the defendant.

The case of *Morier v. St. Paul, Minneapolis & Manitoba Ry. Co.,* 31 Minn. 351, 17 N. W. 952, is a leading one on the subject under discussion.  Railroad section men in charge of a section foreman, engaged in repairing track, built a fire on the railroad right of way to warm their coffee for dinner.  After dinner they resumed work without extinguishing the fire,

31—96 KAN.

which spread to adjoining premises and burned the plaintiff's hay. In holding that the railroad company was not liable the court said:

"Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. A master is not responsible for any act or omission of his servant which is not connected with the business in which he serves him, and does not happen in the course of his employment. And in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was *at the time* engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself, and as his own master, *pro tempore*, the master is not liable. If the servant step aside from his master's business, *for however short a time*, to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities. . . . It would seem to follow, as an inevitable conclusion, from this, that on the facts of this case the act of these section-men in building a fire to warm their own dinner was in no sense an act done in the course of and within the scope of their employment, or in the execution of defendant's business. For the time being they had stepped aside from that business, and in building this fire they were engaged exclusively in their own business, as much as they were when eating their dinner; and were for the time being their own masters, as much as when they ate their breakfast that morning, or went to bed the night before." (pp. 352, 353.)

The Minnesota court cites (p. 353), among other authorities, the English case of *Williams v. Jones,* 3 Hurl. & C. 256. There the plaintiff let to the defendant a shed in which to make a signboard. The defendant employed a carpenter to do the work. The carpenter lighted his pipe with a burning shaving ignited by a match, and then dropped the shaving in the midst of others, with the result that the shed was burned. It was held that the defendant might be responsible for the negligence of the carpenter in the course of his employment, but not for his negligence in the personal matter of lighting his pipe. The laborers in these cases were not hired to cook or to do washing or to supply other of their personal needs through the agency of fire any more than the carpenter in the English case was hired to smoke his pipe, and the fact that they were "blanket Mexicans," that the defendant furnished

them with tents and stoves when the weather grew cold, that they used old ties for fuel, or that the defendant's foreman required the fires to be removed from close proximity to the depot, does not bring the maintenance of the fires within the service which the Mexicans were employed to perform for the defendant.

It is not necessary to discuss the assignments of error in the Ireton case. None of them relates to the fundamental subject which has just been discussed, and judgment should have been rendered for the defendant on the defendant's demurrer to the evidence, for the reason that no cause of action against the defendant was proved. Therefore, the judgment in the Ireton case is affirmed. The judgment in the Schwantes case is reversed and the cause is remanded with direction to render judgment for the defendant on the findings of fact.