José N. Baralt y Esteban Rivera Treviño, demandantes-recurridos, *v.* Estado Libre Asociado, demandado-recurrente.

*Número*: 12545. *Resuelto*: 11 de agosto de 1961.

*Guillermo A. Baralt* y *Abelardo Ruiz Suria,* abogados de los demandantes-recurridos; *J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar* y *Luis Venegas Cortés, Procurador Auxiliar,* abogados del demandado-recurrente.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Mediante la Resolución Conjunta núm. 28 de 27 de mayo de 1954, (¹) la Asamblea Legislativa de Puerto Rico autorizó a los señores José M. Baralt y Esteban Rivera Treviño a iniciar acción contra el Estado Libre Asociado de Puerto Rico en reclamación de alegados daños causádosle por un incendio ocurrido el día 20 de abril de 1953, mientras se realizaban los estudios para el trazado de la carretera que conduce de Río Piedras a Fajardo, hoy carretera estatal número tres. En virtud de dicha resolución se renunció anticipadamente por el Estado a la defensa de que la actuación

---

(¹) La sección 1 de la mencionada resolución conjunta lee como sigue:
"Por la presente se autoriza a Don José M. Baralt y a Don Esteban Rivera, residentes en el municipio de Fajardo, a entablar demanda contra el Estado Libre Asociado de Puerto Rico, haya o no actuado éste a través de un agente especial, acción civil, dentro de los próximos doce meses a partir de la fecha de vigencia de esta Resolución, que les permita reclamar ante los Tribunales de Justicia compensación pecuniaria en concepto de indemnización por los daños y perjuicios que alegan les fueron ocasionados por El Estado Libre Asociado de Puerto Rico, por un incendio ocurrido el día 20 de abril de 1953, en fincas de su propiedad en Fajardo, mientras se realizaban los estudios para la nueva carretera que conduce de Río Piedras a Fajardo."

causante de los daños fue realizada por una persona que no era un agente especial, se extendió el término prescriptivo y se dispensó de la prestación de fianza.([2]) *Acevedo* v. *Pueblo,* 69 D.P.R. 434 (1948); *Campis* v. *Pueblo,* 67 D.P.R. 393 (1947).

Las partes sometieron una estipulación sobre los hechos al tribunal de instancia y en cuanto a la fijación de los daños se designó un comisionado que oportunamente rindió un informe. Aparece que allá para el 20 de abril de 1953 el Departamento de Obras Públicas del Estado Libre Asociado realizaba estudios para el trazado de la nueva carretera estatal número 3 en el tramo comprendido entre las poblaciones de Fajardo y Luquillo. Esta labor se efectuó por una brigada dirigida por el ingeniero Rafael Rexach, Jr. e integrada por varios obreros entre quienes se encontraba Gumersindo Ayala Ponce. Fue necesario realizar parte de los estudios dentro de la finca del demandante Baralt, para lo cual éste había concedido la correspondiente autorización. El día indicado, alrededor de las dos de la tarde, el nivelador ordenó a Ayala que le llevara un jalón a otro obrero que se encontraba distante. Ayala, quien estaba fumándose un cigarrillo, al penetrar al cañaveral intentó apagarlo, y creyendo haberlo hecho, lanzó la colilla al suelo. Súbitamente se incendiaron las hojas secas de la plantación de cañas y se desarrolló un incendio que afectó 25.59 cuerdas de retoños pertenecientes a Baralt y 40 cuerdas de caña propiedad de Rivera Treviño.

Se acepta que el ingeniero a cargo de la obra había ordenado expresamente a los obreros que se abstuvieran de fumar cuando penetraran o estuvieren trabajando dentro de los cañaverales.([3])

---

([2]) El relevo de prestación de fianza era innecesario ya que desde la aprobación de la Ley núm. 410 de 11 de mayo de 1951 (Leyes, pág. 1093), que enmendó el artículo 4 de la ley general sobre la materia núm. 76 de 13 de abril de 1916 (Leyes, pág. 155) este requisito había sido eliminado.

([3]) El tribunal a quo concluyó además que el día del incendio el obrero no había recibido advertencia alguna y que al recibir la orden de llevar el jalón, aunque estaba fumando, no se le advirtió que dejara de hacerlo an-

Se dictó sentencia declarando con lugar la demanda previa determinación de que el acto del obrero "al tratar de apagar el cigarrillo en la forma, manera y sitio en que lo hizo, respondía al interés de cumplir la orden recibida para realizar una gestión para beneficio del demandado" y que además medió negligencia del encargado o superior del obrero "al permitirle que fuera a ejercitarla apagando la colilla en la forma en que trató de hacerlo".

En el presente recurso de apelación se señala la comisión de varios errores, pero fundamentalmente se circunscriben a la fijación de la responsabilidad, por haberse considerado al obrero como agente del Estado y haberse determinado que el acto que provocó el incendio beneficiaba el interés de la parte demandada. Discutiremos este aspecto del caso.

Según señalamos en *Jiménez* v. *El Pueblo*, 83 D.P.R. 201 (1961), en donde consideramos una autorización legislativa similar para demandar al Estado, el alcance de la resolución conjunta previamente transcrita es hacer aplicables a este litigio los principios generales de agencia, o sea, convertir al Estado en un patrono privado, responsable por las actuaciones de sus agentes o empleados con ocasión de sus funciones y mientras actúen en el desempeño de las mismas como tales empleados o agentes. *Rodríguez* v. *Pueblo*, 75 D.P.R. 401, 404–405 (1953). Es preciso pues que la actuación generadora del daño tenga alguna relación con la gestión encomendada al empleado y no responda exclusivamente a motivos personales de éste. *González* v. *Cía. Agrícola*, 76 D.P.R. 398 (1954) ; *Lloréns* v. *Lozada*, 73 D.P.R. 271 (1952) ; *Rivera* v. *Maldonado*, 72 D.P.R. 479 (1951) ; *Maysonet* v. *Sucn. Arcelay*, 70 D.P.R. 167 (1949) ; *Suárez* v. *Saavedra*, 60

---

tes de cumplir la misma. Esta determinación está huérfana de prueba, pues no aparece entre los hechos que fueron objeto de estipulación. Sin embargo, como veremos, no era necesaria ni indispensable a los fines de la fijación de la responsabilidad civil. Lo mismo podemos decir en cuanto a la descripción que se hace de la forma y manera como el obrero intentó apagar la colilla.

D.P.R. 605 (1952) ; Harper y James, *The Law of Torts*, 1956, vol. II, sec. 26.9, pág. 1390.

La situación específica de la responsabilidad del patrono por el acto de su agente o empleado al lanzar un cigarrillo o provocar un incendio durante el curso del empleo ha sido objeto de consideración en varias ocasiones por cortes de Estados Unidos. Como frecuentemente ocurre, varias soluciones han sido adoptadas. Examinaremos brevemente los casos representativos, con especial atención al razonamiento que respalda cada uno de los resultados.

Una brigada de obreros de una corporación dueña de unas líneas de transmisión de electricidad se dedicaba a su reparación. Las líneas estaban tendidas sobre una servidumbre de paso cuyo terreno estaba cubierto de yerba y hojas secas. Se desarrolló un incendio causado por el lanzamiento por uno de los obreros de una colilla o un fósforo encendido. El tribunal indicó que el conocimiento que tenía la demandada de la condición peligrosamente inflamable de la yerba seca le imponía la obligación de prohibir a los empleados el uso descuidado de cigarrillos o fósforos, y que si el patrono tenía información de que los obreros eran descuidados, bajo las condiciones descritas, podía imponérsele responsabilidad por retenerlos en el empleo. Sin embargo, se desestimó la reclamación porque el récord no demostraba tal conocimiento. *Yore v. Pacific Gas & Electric Co.*, 277 Pac. 878 (Cal. 1929). Se indicó además que ni el hábito de fumar de los empleados ni su actuación al lanzar las colillas o fósforos eran actos dentro de las funciones del trabajo de cavar hoyos e instalar postes para las líneas, y que más bien se trataba de actuaciones para el placer personal de los empleados por las cuales el patrono no era responsable. Véanse, *Ireton v. Atchison, T. & S. F. Ry. Co.*, 152 Pac. 625 (Kan. 1915) ; *Marrier v. St. Paul, M. & M. Ry. Co.*, 17 N.W. 952 (Minn. 1884) ; *Tomlinson v. Sharpe*, 37 S. E.2d 498 (N. C. 1946).

En *Feeney v. Standard Oil Co.*, 209 Pac. 85 (Cal. 1922), se trataba de un empleado de una firma distribuidora de ga-

solina que ocasionó un incendio al dejar caer descuidadamente un fósforo con el cual había encendido un cigarrillo. El piso de la estación de servicio del reclamante estaba cubierto por cierta cantidad de gasolina que se había derramado mientras se efectuaba la entrega de la gasolina. Al desestimarse la acción contra la Standard Oil Co. se indicó que el acto de encender el cigarrillo no formaba parte de la ejecución de las gestiones de negocio de la demandada y que meramente constituía un acto independiente del empleado para su propio placer personal, y que el hecho de que ocurriera durante el curso del empleo no era suficiente para que se le impusiera responsabilidad al patrono. Véanse, *Herr* v. *Simplex Paper Box Corporation*, 198 Atl. 309 (Pa. 1938); *Kelly* v. *Lousiana Oil Refining Co.*, 66 S.W.2d 997 (Tenn. 1934); *Schuck* v. *Carney*, 118 S.W.2d 896 (Tenn. 1938).

Un encargado de reparaciones de una compañía telefónica vació su pipa de fumar en el patio de un cliente en ocasión de girar una visita para determinar la causa de la falta de funcionamiento del teléfono de dicho abonado. Aparentemente la picadura no estaba completamente apagada y se originó un fuego. En *Adams* v. *Southern Bell Telephone & Telegraph Co.*, 295 Fed. 586 (CCA 4, 1924) se sostuvo que no constituyó error la negativa del tribunal a transmitir una instrucción al jurado al efecto de que el empleado actuaba dentro de las funciones del empleo. A nuestro juicio, la importancia verdadera de la opinión emitida es la distinción que establece cuando la labor del empleado es de naturaleza inherentemente peligrosa o cuando existen ciertos peligros obvios debido a las circunstancias que rodean la ejecución de la gestión. A este aspecto nos referiremos a continuación.

En *George* v. *Bekins Van & Storage Co.*, 205 P.2d 1037 (Cal. 1949), se alude a decisiones de tribunales que han impuesto responsabilidad al patrono por incendios provocados por sus empleados en circunstancias similares a las que hemos considerado a base de la determinación de que las funciones y condiciones peculiares del empleo crean un riesgo irra-

zonable para la propiedad de terceras personas, aun cuando se hayan tomado precauciones para evitar que se fume. Es decir, que se toma en consideración el riesgo inherentemente peligroso, que para estos fines surge como consecuencia del empleo. De ahí que en *Bluestein* v. *Scoparino*, 100 N.Y.S.2d 577 (1950), se haga referencia a que el grado de cuidado que se exige al patrono es en proporción al riesgo envuelto con motivo de la naturaleza del trabajo, y que se requiera del patrono, no sólo que prohiba expresamente que se fume, sino el ejercicio de la debida y necesaria vigilancia para asegurarse del cumplimiento de tales órdenes. Es cierto que fumar es un hábito común del cual los patronos tienen conocimiento y ordinariamente es un acto que no entraña riesgo o peligro para otras personas. No existe obligación de resarcir cuando el cigarrillo se enciende en lugares en los cuales no puede razonablemente anticiparse que dicho acto causará daños, pero cuando ello puede anticiparse, la situación varía, y se le impone el deber al patrono de asegurarse que el obrero ejercite el debido cuidado bajo las circunstancias. *Maloney Tank Manufacturing Co.* v. *Mid-Continent Petroleum Corp.*, 49 F. 2d 146 (CCA 10, 1931); *McKinney* v. *Bland*, 112 P. 2d 798 (Okla. 1941); *Palmer* v. *Keene Forestry Ass'n*, 112 Atl. 798 (N. H. 1921); cfr. *Triplett* v. *Western Public Service Co.*, 260 N.W. 387 (Neb. 1935); *Keyser Canning Co.* v. *Klots Throwing Co.*, 118 S.E. 521 (W.Va. 1923); *Wood* v. *Saunders*, 238 N. Y. S. 571 (1930).

Harper y James, *op. cit.*, sec. 26.8, pág. 1386, discuten la situación que consideramos, en la siguiente forma: "Existen también actuaciones que no constituyen una desviación del trabajo encomendado al obrero—que ocurren en el empleo pero que en forma alguna tienden a beneficiar o fomentar los intereses del patrono. Un ejemplo típico es el fumar, con los consiguientes riesgos de fuego. Presumiblemente todas las cortes harían responsable al patrono si permite fumar *u omite adoptar aquellas medidas necesarias para evitarlo en aquellos trabajos en que ello es irrazonablemente peligroso.*"

 Esta es precisamente la solución que corresponde adoptar en el presente caso. Es de conocimiento general el grave riesgo que entraña fumar en un lugar como una plantación de cañas. El Estado no tomó a nuestro juicio las precauciones necesarias para evitar el riesgo indebido a que se sometían los propietarios que accedieron a que sus propiedades se utilizaran para realizar los estudios indicados. Los demandantes tenían derecho a esperar que esta licencia se utilizara en forma que no les perjudicara. *Vincennes Steel Corporation* v. *Gibson,* 106 S.W.2d 173, 175 (Ark. 1937). No era suficiente que se hubieren dado órdenes para que no se fumara al penertrar o estar dentro de los cañaverales. Era necesaria una supervisión activa para que estas órdenes se cumplieran estrictamente en vista del riesgo "inherentemente peligroso", cf. *Martínez* v. *U. S. Casualty* Co., 79 D.P.R. 596 (1956); *González* v. *Cía. Agrícola,* 76 D.P.R. 398 (1954); *Lloréns* v. *Lozada,* 73 D.P.R. 271 (1952); ya que como hemos expuesto, el grado de cuidado que se exige al patrono tiene que ser proporcional al mayor riesgo envuelto bajo las circunstancias especiales que rodean el presente caso. En verdad no se trata estrictamente hablando de una aplicación de la doctrina de *respondent superior,* pues el acto de fumar no tiene conexión razonable con el empleo y constituye más bien un placer personal del obrero, y tampoco puede afirmarse que sea para beneficiar o propiciar los intereses del patrono. Se trata más bien de riesgos previsibles (*foreseeability*).

Tampoco se ha cometido el error señalado que se refiere a ciertas partidas de daños incluidas en el informe del comisionado.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 4 de junio de 1958.*